IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KAREN SUE SPERLING, an individual, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 16-CV-101-JED-TLW |
| CSAA FIRE & CASUALTY INSURANCE COMPANY, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the defendant's Motion for Summary Judgment (Doc. 42). Plaintiff, Karen Sue Sperling, filed multiple documents in response. After she made several separate and redundant filings, and after giving her multiple extensions, the Court accepted her latest (and most complete) brief (Doc. 50) and all exhibits (Doc. 50-1, 50-2, 50-3, 51-1, 51-2) that she had submitted in response. (*See* Doc. 52).

**I.   Background**

Defendant, CSAA Fire & Casualty Insurance Company (AAA), insured plaintiff's Broken Arrow rental property under a Policy that provided the following coverages: $240,369 for the dwelling (coverage A); $24,037 for other structures (coverage B); $12,018 for personal property (coverage C); $48,074 for fair rental value (coverage D); $300,000 for personal liability each occurrence (coverage E); and $1,000 medical payments to others (coverage F). (Doc. 42-1 at 3). Plaintiff alleges that, on or about November 10, 2014, the insured property sustained damage from vandalism, including stolen wiring, damaged property, graffiti, and other losses. (Doc. 2-2 at 2).

On December 22, 2014, plaintiff contacted AAA to report the loss, and AAA opened a claim for her. (Doc. 42-2 at 11). In January, upon investigation, AAA concluded that the property

had been vacant for more than 60 days, in which there would not be coverage under the Policy, which excluded coverage for losses caused by vandalism "if the dwelling has been vacant for more than 60 consecutive days immediately before the loss." (Doc. 42-3; *see also* Doc. 42-1 at 22-23 of 65). AAA also noted that the Policy excluded coverage for "neglect." (Doc. 42-1 at 30 of 65). AAA thus informed plaintiff, by voicemail and letter, that the damage was not covered by the Policy. (Doc. 42-3). The agent's letter explained the basis for the decision and stated, "[i]f you believe that any of the information we relied upon in reaching our decision is inaccurate, if you have any additional information you would like us to consider as part of this claim, or if you have any further questions or comments, I'm eager to help. Please do not hesitate to contact me at the number below." (Doc. 42-3 at 3).

Plaintiff subsequently secured counsel, who contacted AAA about the November 2014 claim in June of 2015 and provided utility bills in an attempt to establish that the home was occupied. (*See* Doc. 42 at 6, ¶¶ 11-12; Doc. 42-4 at 2-4). AAA reopened the claim and concluded that damage to the rental property would cost $47,622.36 to repair. (Doc. 42-5). Considering depreciation in the amount of $8,697.21 and the policy's $500 deductible, AAA initially paid plaintiff an amount of $38,425.15 based on the actual cash value of the property at the time of the loss. (Doc. 42-6). AAA also paid plaintiff $2,499 to replace a riding lawn mower (Doc. 42-10) and $13,200 for the fair rental value of her property, for a total rental reimbursement for 12 months. (Doc. 42-6, 42-11).

Plaintiff admitted in her deposition that she used part of the insurance payments to cover her day-to-day living expenses. (Doc. 42-7 at Dep. p. 74:1-7). She has also not disputed that she did not complete repairs until shortly before her second deposition in this case. After AAA was afforded an opportunity to inspect the property, AAA then tendered the depreciation hold back of

$8,697.21, in accordance with the Policy. As a result, AAA has paid $47,122.36 on the property damage claim (under Coverage A), plus $2,499 for the lawn mower (under Coverage C), plus $13,200 for a year's rental value (under Coverage D).

## II.     Standards and Plaintiff's Pro Se Status

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Anderson*, 477 U.S. at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255. The court may not weigh the evidence and may not credit the evidence of the party seeking summary judgment, while ignoring the evidence offered by the non-movant. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

The case was initially filed by plaintiff's counsel. Her counsel subsequently withdrew, and plaintiff entered *pro se*, after the Court provided her ample time to enter an appearance through new counsel. A *pro se* plaintiff is not entitled to "directions from the district court or from Defendants to assist [the plaintiff] in responding to a motion for summary judgment under Fed. R. Civ. P. 56." *McDaniels v. McKinna*, 96 F. App'x 575, 578 (10th Cir. 2004). Thus, while the courts "construe pleadings filed by a *pro se* litigant liberally, [they] do not serve as the *pro se* litigant's advocate," and "*pro se* litigants are expected to follow the Federal Rules of Civil

Procedure, as all litigants must." *Id.*; *see also Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (*pro se* plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and substantive law, and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief).

Despite ample opportunities and time to respond, the plaintiff has not provided coherent arguments or citations to the record which dispute AAA's arguments, evidence, or statement of undisputed facts. For example, many of plaintiff's responses consist solely of unsupported denials: "This is not true," "Plaintiff is not aware," "Plaintiff does not recall," "Why would Defendants say that about me," and "Unavailable time to answer." (Doc. 50 at 7-8). Contrary to her suggestions that she did not have sufficient time, she filed multiple briefs, each time asking for more time, and the Court gave her multiple extensions. (*See* Doc. 43, 45, 46, 47, 48, 49, 50, 52).

Plaintiff has not supported any of her contentions with citations to evidence, as is required under Rule 56. "A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). While plaintiff has filed 160 exhibits, she has not provided any citations or coherent argument as to which exhibits present disputed factual issues. As AAA points out, numerous of plaintiff's exhibits, including many documents that predate the plaintiff's November 2014 vandalism claim, appear to have nothing to do with this case. While the Court has examined plaintiff's exhibits, it is not required to search her 160 exhibits in an attempt make the plaintiff's arguments for her. *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him."); *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) ("[plaintiff] argues that . . . evidence of these eight

4

promotions was in the record on summary judgment and the court should have considered it. But on a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record.'") (quoting *Downes v. Beach,* 587 F.2d 469, 472 (10th Cir.1978)).

### III.   Discussion

#### A.   Breach of Contract Claim

Under Oklahoma law, an insurance policy is a contract and should be construed consistent with its terms and conditions. *Okla. Stat.* tit. 36, § 3621; *Bituminous Cas. Corp. v. Cowen Const., Inc.,* 55 P.3d 1030, 1033 (Okla. 2002). In order to recover on a breach of contract claim under Oklahoma law, a plaintiff must prove: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. Inst. 23.1, Oklahoma Uniform Jury Instructions—Civil; *see also Digital Design Grp. Inc. v. Info. Builders, Inc.,* 24 P.3d 834, 844 (Okla. 2001). "[N]o person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance thereof on both sides, except where recovery may be for exemplary and penal damages." *Okla. Stat*. tit. 23, § 96.

AAA first argues that the plaintiff has been paid a total of $47,122.36, which fully compensated her such that she is not entitled to any further benefits under Coverage A – Dwelling. (Docs. 42-6, 42-9). The Coverage A payments totaling $47,122.36 were based on a repair estimate prepared by a property inspection and a review of information plaintiff submitted. The plaintiff has not identified what amounts she believes are still at issue, such that the Court has no way to evaluate any claim by her that AAA owes her more money under the Policy.

Plaintiff has not established that she has paid any amount exceeding the payments to her under the Policy for remediation of the vandalism damage. While she previously asserted that she

5

was entitled to $20,088.40 for "Mold Repairs" (Doc. 42-8, Answer No. 7), she testified that the mold damage was not the result of vandalism, but was instead caused by a leaking roof, which was not part of the vandalism claim presented in November 2014. (Doc. 42-7 at Dep. p. 150). In short, plaintiff has not established that she is still due money under Coverage A of the Policy.

AAA has also paid plaintiff $2,499 for benefits under Coverage C – Personal Property, based upon plaintiff's prior assertions that she owned a lawn mower that was damaged. (Doc. 42-10). Plaintiff subsequently admitted in her deposition that she did not own the mower, which was actually owned by prior renters and had been damaged prior to any vandalism. Regardless of whether or not the mower was the proper subject of any claim, AAA paid plaintiff for the mower, and plaintiff has not established any right to any additional payment under Coverage C.

AAA has also paid $13,200 in Fair Rental Value benefits to plaintiff under Coverage D, which represents a full year's worth of lost rent. (Doc. 42 at 20). The Policy provides that such "[p]ayment will be for the shortest time required to repair or replace that part of the [property] rented or held for rental." (Doc. 42-1 at 15 of 65). AAA argues that a year's rental value is sufficient to cover the time necessary to have completed repairs, and notes that plaintiff admitted that she used some of the insurance money to cover her own living expenses, rather than for repairs. (Doc. 42-7 at 3 [Dep. p. 74]). Plaintiff has not disputed that evidence or otherwise shown entitlement to any additional rental payments beyond the one year of rental for which she was paid.

In her original pleading, plaintiff asserted a right to recover attorney's fees. AAA notes that the Policy does not provide for payment of attorney fees (Doc. 42-1), and plaintiff has not responded to that argument or otherwise refuted it. Moreover, as noted above, the plaintiff has not established any breach of the Policy or entitlement to additional payments thereunder.

B.  **Bad Faith Claim**

Oklahoma first recognized claims for bad faith tort in the insurance context in *Christian v. American Home Assur. Co.*, 577 P.2d 899 (Okla. 1977).  Although the basis for plaintiff's bad faith allegations is not clear in her summary judgment response, it appears that she complains that full payment should have been made sooner than AAA made it.  "The elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying the payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury."  *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009).  "The absence of any one of these elements defeats a bad faith claim."  *Id.*  The Oklahoma Supreme Court has further described the type of proof required to establish a bad faith claim:

> The critical question in a bad faith tort claim is whether the insurer had a "good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding [or delaying] payment under the policy." If there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith. The tort of bad faith hence does not prevent an insurer from denying, resisting or litigating any claim as to which the insurer has a reasonable defense. "Resort to a judicial forum is not *per se* bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit."

*Id.* at 725 (citations omitted).

AAA in this case has presented evidence that it had reason to initially deny the November 2014 vandalism claim, and the plaintiff has not presented evidence to counter it.  AAA initially denied the claim because the property had been unoccupied for more than 60 days, which would render an express exclusion of the Policy applicable.  That was based upon AAA's investigation, which revealed that the plaintiff had evicted prior tenants months before the vandalism.  As a result, AAA notified the plaintiff that the claim was being denied, but invited the plaintiff to

7

provide any additional information that she wanted AAA to consider. She did not do so until several months later after she hired an attorney. (Doc. 42-3 at 3; Docs. 42-2, 42-5). Once information was provided to support the plaintiff's claim that the property had utilities, AAA reopened the claim and has paid her a total of $62,821.36.

Plaintiff has not provided evidence to support her contention that payment was delayed in bad faith. Also, as noted with respect to the breach of contract, she has not established that she is owed anything further under the terms of the Policy. In short, plaintiff has not presented any evidence from which a jury could infer that AAA acted in bad faith or treated her in an unreasonable manner or that any of the necessary elements of a bad faith claim have been satisfied. *See Ball*, 221 P.3d at 724-25.

### IV.   Conclusion

For the foregoing reasons, AAA's Motion for Summary Judgment (Doc. 42) is **granted** in all aspects. A separate judgment will be entered.

SO ORDERED this 26th day of July, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE